Anthony G. STEIER, Appellant,

v.

Michael M. BEST, et al., Appellees.

No. Civil Action No. 3:02CV–63–S.

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 19, 2002.

John D. Cox, Donald L. Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, KY, for Appellant.

David Marcus Cantor, Melinda Abney Whitton, Seiller & Handmaker, Louisville, KY, Robert P. Hamilton, Lorch & Naville, New Albany, IN, for Appellees.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This is matter is before the court on appeal from the decision of the United States Bankruptcy Court denying the appellant, Anthony G. Steier ("Steier"), a declaration that the debt owed to him by the appellee Michael Best ("Best"), is non-dischargeable pursuant to 11 U.S.C. 523(a)(2)(A), 11 U.S.C. 523(a)(2)(B), and 11 U.S.C. 523(a)(6).

### Background

Michael Best, an orthopedic surgeon, founded a company named Impairment Analysis Centers, Inc. ("IAC") with Defendant Brian J. Finney ("Finney"). The purpose of IAC was to perform disability exams for worker's compensation claimants.

Best met Steier in 1995, and at some point the two began discussing the possibility of finding new investors for IAC. Steier's father-in-law, former Kentucky Governor John Y. Brown, along with Bruce Lunsford, were interested in investing in the company. Steier did not intend to put his own funds into the venture, but was interested in obtaining a finder's fee from IAC for bring in Brown and Lunsford as investors.

A meeting was arranged with Steier, Best, Finney, Brown and Lunsford. At the meeting, Finney provided Best, Steier, Brown, and Lunsford copies of IAC's business plan. The business plan referred to the company's need for financing in the amount of $1 million over the next five (5)

years in order to accomplish its purpose of "growth through acquisitions," new center openings and the possible purchase of an Ergasys System and software. The business plan also contained a financial statement listing the company's total assets as $155,726 and total liabilities as zero.

A partnership proposal materialized in which Brown and Lunsford were to invest $1,000,000 in capital in a newly formed corporation, while the shares owned by Finney and Best and the assets of IAC were to be contributed to the new corporation. The new corporation would then be owned 25% by Best, 25% by Finney and 50% to be divided between Brown, Lunsford and Steier, even though Steier was not actually going to invest any of his funds. Best and Finney were to receive annual salaries of $500,000 and $300,000 respectively, and a personal guaranteed loan of $175,000 from the new corporation due at the end of the third year if the company was not showing a profit at the end of the second year.

The partnership proposal was signed by Brown, Steier and Best on September 29, 1997. Lunsford decided not to invest. When Brown signed the partnership proposal, he added a handwritten clause that made the proposal subject to cancellation upon notice by October 3, 1997. On October 2, 1997, Brown gave written notice to Best and Finney that he was canceling the partnership proposal. Since Steier was not investing any of his funds, the entire proposal collapsed.

Approximately one week after Brown cancelled the Partnership Proposal, Steier called Best and stated that he wanted to invest in IAC. On November 10, 1997, Steier executed a stock purchase agreement with Finney and Best whereby they each sold Steier 5% of their stock in IAC for a total of $300,000. The agreement provided that Steier would receive 50 additional shares of IAC on May 1, 1998 upon payment of $450,000, which would be reduced to $300,000 if Steier presented qualified investors to IAC. In the event he failed to deliver the purchase price for the additional shares, Steier was required to return this interest in the stock, and Finney and Best were required to repay his initial $300,000.

On November 11, 1997, Steier paid for the initial stock with two personal checks in the amount of $150,000, one made payable to Finney and the other to Best. Upon receipt of his check, Best kept $120,000 as back compensation and invested the remaining $30,000 of his funds into IAC. Finney kept the entire $150,000.

Steier testified that after the initial purchase he got "cold feet." In April of 1998, Steier, through counsel, sent written notice to Best and Finney that he was not going to purchase the additional IAC stock and demanded repayment of his $300,000 purchase price pursuant to the terms of the Stock Purchase Agreement.

When Finney and Best failed to return the entire $300,000, Steier sued them in Jefferson Circuit Court for breach of the stock purchase agreement. On September 23, 2000, Steier obtained a judgment against them in the amount of $300,000 plus interest. In partial satisfaction of the judgment Steier received some payments from IAC and Finney. Steier also attached Best's personal bank account and obtained approximately $6,000. Steier claims Best still owes his $127,500 in principal and $81,848.26 in interest as of August 22, 2001 and seeks 12% interest from August 22, 2001 plus costs and attorney's fees.

In 1998, Best was diagnosed with a serious vision disorder, resulting in his inability to perform orthopedic surgery. Unable to support his former lifestyle, Best sold

an office building in New Albany, Indiana in an attempt to avoid bankruptcy. However, despite his efforts, Best and his wife Colleen filed their Voluntary Petition under Chapter 7 of the United States Bankruptcy Code.

Steier filed an adversary proceeding in the bankruptcy court to have the state court judgment he obtained against Best declared non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6). Steier appeals the court's decision as it relates to 11 U.S.C. §§ 523(a)(6) and 523(a)(2)(B).

Steier premised his claim under 11 U.S.C. 523(a)(6) on the allegation that Best continually lied to him about the location of his assets and hid money in his home to avoid repaying Steier. Steier premised his claim under 11 U.S.C. 523(a)(2)(B) on the allegation that he relied on a materially false financial statement given to him before his investment in IAC.

### Standard of Review

██ A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Federated Department Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir.2001). Factual determinations are overturned only if they are clearly erroneous. BR 8012. A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *In re Scott*, 188 F.3d 509, 1999 WL 644380 (6th Cir.1999). Mixed questions of law and fact are determined under a de novo standard of review. *In re Kisseberth*, 273 F.3d 714, 719 (6th Cir.2001).

### Legal Analysis

1. **11 U.S.C. § 523(a)(6); Debts for Willful and Malicious Injury by the Debtor**

The Bankruptcy Code, 11 U.S.C. § 523, provides that debts ·arising from certain circumstances are not subject to discharge. Particularly, 11 U.S.C. § 523(a)(6) provides that a debtor will not be discharged from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

Steier does not contend that the breach of the stock purchase agreement was a malicious injury warranting a determination that his debt was non-dischargeable. Instead, he argues that by hiding money in his safe and failing to inform him of a $164,000 profit he earned from the sale of an office building in an effort to avoid paying, Best committed a second injury against him. Steier argues that the bankruptcy court misapplied the standard for determining his claim under 11 U.S.C. § 523(a)(6) by finding that he did not have greater rights to money held by the Bests than other creditors. According to Steier, the law does not require him to prove that he had any greater right to the money, but only that the debtor desired to cause the consequences of his act or believed that the consequences were substantially certain to result. To support this argument, he cites *In re Markowitz*, 190 F.3d 455 (6th Cir.1999).

██ However, before the bankruptcy court can apply the *In re Markowitz* standard, it must first make a threshold determination that the malicious and willful injury complained of gave rise to the debt as required by the statute.

██ For a debt to fall within the exception to discharge in 11 U.S.C. 523(a)(6), the creditor has the burden of proving that it sustained an injury *as a result* of a willful and malicious act by the debtor. *Rezin v. Barr*, 194 B.R. 1009, 1024 (Bankr. N.D.Ill.1996). "Thus, a debtor's actions must be determined to be the cause of the

creator's injury." *In re Smith,* 249 B.R. 748, 750 (Bkrtcy.S.D.Ohio, 2000). Moreover, the injury must be the debtor's invasion of the creditor's legally protected rights. *In re Russell* 262 B.R. 449, 454 (Bkrtcy.N.D.Ind.2001)

Steier faces two problems under 11 U.S.C. § 523(a)(6). First, he cannot demonstrate that the debt he is seeking to have declared non-dischargeable arose from Best's actions to conceal his assets. To the contrary, the debt in question arose out of the breach of the stock purchase agreement.

Second, Steier cannot demonstrate an injury to his legally protected rights. The judgment granted by the state court did not assign to Steier any superior rights to any specific assets belonging to Best. As such, the attachment of Best's bank account did not give Steier priority status to Best's funds. Even if Best intentionally avoided paying Steier, this does not amount to an 11 U.S.C. 523(a)(6) injury absent some harm to Steier's legally protected rights.

**2. 11 U.S.C. 523(a)(2)(B); Debts for Money, Property, Services to the Extent Obtained by Use of a Writing**

Under 11 U.S.C. § 523(a)(2)(B), a debt may be declared non-dischargeable if four elements are met. First, the statement in writing must be materially false. Second, it must be respecting the debtor's or an insider's financial condition. Third, it must have been reasonably relied upon by the creditor. Fourth, it must have been caused to be made or published with intent to deceive.

According to Steier, the requirements of this provision are met because the financial statement supplied to him and other potential investors was false. He contends that the financial statement failed to disclose that IAC's liabilities included back

salaries owed to Finney and Best which would have resulted in liabilities exceeding the company's assets.

The bankruptcy court determined that the requirements of 11 U.S.C. § 523(a)(2)(B) had not been satisfied because the third element—reasonable reliance—had not been proven. The court found that Steier had not actually relied on the financial statement when he invested in IAC.

The bankruptcy court's finding of reasonable reliance is a finding of fact subject to review under the clearly erroneous standard. *Bank One, Lexington, N.A. v. Woolum,* 979 F.2d 71, 75 (6th Cir.1992). Moreover, "the issue of reasonable reliance is more completely considered as two questions: (1) Did the creditor rely on the materially false financial statement of the debtor; and (2) was that reliance reasonable." *In re Plechaty,* 213 B.R. 119, 126 (6th Cir. BAP 1997).

The bankruptcy court determined that Steier did not rely in fact on the financial statement. The court based this finding on Steier's deposition testimony where he stated that he did not rely on any written documents, but relied on the enthusiasm of Best and Finney. The court also points to Steier's trial testimony. There he testified that he did rely on the financial statement, but on cross-examination admitted he did not understand the financial statement and never asked questions about it of Best, Finney or an accountant. Based upon this evidence, we conclude that the Bankruptcy court's determination that there was no actual reliance on the part of Steier was not clearly erroneous. Having found no actual reliance, it is unnecessary to discuss the issue of reasonableness.

For the reasons set forth above, IT IS **HEREBY ORDERED AND ADJUDGED** that the order and judgment of the Bankruptcy Court are **AFFIRMED.**