In the matter of Ty D. BOUGHTER, Sr., (Chapter 7 Case Number 02–40047), Debtor.

Thomas I. Blair, Plaintiff

v.

Ty D. Boughter, Sr., Defendant.

Bankruptcy No. 02–40047.
Adversary No. 02–4107.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Sept. 5, 2003.

Sherwin P. Robin, Savannah, GA, for Plaintiff.

R. Wade Gastin, Gastin & Hill, Savannah, GA, for Defendant.

### MEMORANDUM AND ORDER

LAMAR W. DAVIS, JR., Bankruptcy Judge.

Ty D. Boughter, Sr. ("Debtor") filed a voluntary Chapter 13 bankruptcy case in this Court which was converted to Chapter 7 on July 30, 2002. On August 21, 2002, Thomas I. Blair ("Plaintiff"), a judgment creditor, filed a Complaint to Determine Nondischargeability of Debt. Plaintiff asserts that his judgment debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as originating from a "willful and malicious injury." In an Order entered May 27, 2003, I denied the Cross Motions for Summary Judgment filed by Plaintiff and Debtor because the record presented factual issues. Accordingly, a trial was held on July 31, 2003, to resolve such disputes. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and (b)(1) over this core proceeding. Pursuant to Federal Rule of Bankruptcy Procedure 7052(a), I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The record underlying this Order includes, by stipulation of the parties, all of the evidence proffered during the summary judgment phase of the case, together with live testimony presented on July 31, 2003. Debtor was not present at the trial, but his counsel argued his position in his absence. Both Plaintiff and his bankruptcy attorney made an appearance. Additionally, George Lewis, personal injury counsel to Plaintiff, testified as to the facts pertaining to this matter. I find as follows.

Debtor operated a taxi service in Savannah, Georgia known as Airport Taxi. On April 2, 1997, Plaintiff was injured in an automobile collision when he was rear-ended by a car that was driven by an employee of Debtor, Arthur Jones, Jr. ("Driver"). Driver gave the attending police officer the information that Southern Alternative Risk ("Southern"), policy No. R1002497, provided the insurance on the taxi which he was driving. (Aff. of att'y George L. Lewis ¶ 4.)

On April 8, 1997, Plaintiff retained George Lewis as personal injury counsel and Lewis sent notice of his representation to Airport Taxi. (*Id.* ¶ 2.). Approximately a week later, Lewis received a telephone call from Debtor in which Debtor advised Lewis that he was aware of the accident because Driver had reported it to him. He further stated that he was "self-insured," but that he did not intend to cooperate in any way with Lewis in his representation of Plaintiff because "your man is not hurt." After reiterating his intent to not cooperate with Lewis, Debtor abruptly hung up the phone. Lewis thereafter wrote the insurance commissioner for the State of Georgia to verify whether a certificate of self-insurance was on file for Airport Taxi and to obtain information about Southern. (*Id.* ¶ 4). In May of 1997, Lewis was informed that there was no certificate of self-insurance on file with the insurance commissioner. Also, it was discovered that Southern was merely an insurance agent and not an insurance company. Thus, Plaintiff was unable to file a claim with Southern.

On May 14, 1997, Lewis filed suit against Debtor d.b.a. Airport Taxi and Driver. (Chatham County, Georgia, State Court Civil Action No. 197–1167–F). Lewis transmitted interrogatories to Debtor in an attempt to obtain insurance information or any further information concerning the status of Debtor's company as a self-insured business. Lewis obtained proper service, but no answer was ever filed. Accordingly, in September 1997 the case was determined to be in default and a hearing to determine damages was scheduled at which time Driver appeared at trial, but the Debtor did not. Evidence was produced in the State Court from Plaintiff, his wife and Plaintiff's treating physician and neurologist, Dr. Thomas Stanley. Based on such evidence, a judgment in the amount of $103,654.01 plus costs was entered on October 23, 1997. Of that amount, $906.90 was awarded for property damage, $2,747.11 for special damages and $100,000 for general and compensatory damages.

On November 5, 1997, Plaintiff recorded the State Court Judgment for the total amount of $156,053.66 in the General Execution Book of the Superior Court of Chatham County, but has yet collect any amounts related to the judgment. Ultimately, Lewis obtained records from the Savannah Airport Commission through the Open Records Act in an attempt to determine the existence of insurance coverage for Airport Taxi. In early December of 1997, Lewis discovered that Insurance Corporation of New York ("ICNY") had provided liability coverage for Airport Taxi through Southern as an agent. (Aff. of att'y George L. Lewis ¶ 7.) Further, the certificate of insurance on file with the Airport Commission listed the vehicle that was involved in the collision as one of the insured vehicles and that the applicable policy liability limits were $15,000.00 per person and $30,000.00 per incident. On December 9, 1997, Lewis gave notice to ICNY concerning the existence of Plaintiff's claim. However, ICNY denied coverage due to the lack of timely notice as they were not notified of the claim until eight months after the collision.[1] Despite Lew-

---

1. George Lewis concedes that ICNY did not receive timely notice and that, because of this fact, Plaintiff had no claim against ICNY. In specific, ICNY's policy of insurance in this case required:

[I]n the event of an accident, occurrence or loss, written notice containing particular sufficient [sic] to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and ad-

is's further efforts, ICNY never accepted responsibility for payment of indemnity on Plaintiff's claim in any amount. *Id.*

Plaintiff contends that the entire judgment debt of $156,053.66 is nondischargeable as it is the result of a willful and malicious injury and excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Plaintiff contends that the Debtor failed to cooperate and, in fact, actively interfered with the efforts of his counsel to receive compensation, determine the existence and amount of insurance, and to provide timely notice to ICNY of his claim. Further, Debtor's actions inevitably led to a denial of coverage by ICNY. That is, had Debtor's complied with Plaintiff's request for insurance information, ICNY would have indemnified Plaintiff for some portion of the State Court judgment.

Debtor's counsel argues that Debtor lacked any specific intent to harm Plaintiff or to deprive him of an avenue for collection of insurance. In his affidavit, Debtor admits that he was, "required to maintain a liability insurance policy that covered all employees or contractors who drove taxi cabs for his business." (Debtor's Aff. ¶ 2). He believed, and still believes, that Driver was listed on a liability insurance policy issued by Phoenix Insurers Surplus Lines Unit ("Phoenix"); however, he asserts that Phoenix denied coverage because Driver was not a listed driver on the policy (*Id.* ¶ 14–6). Debtor also acknowledges that Phoenix has since been barred from underwriting insurance for reasons unknown to him. (*Id.* ¶ 7). In Debtor's defense, his counsel contends that it would be completely illogical for the Debtor to have concealed the existence of insurance that would have otherwise been available to

protect him against personal liability for this loss. Debtor's counsel was, however, unable to disprove or contradict evidence of the conversation between Mr. Lewis and Debtor in which Debtor said that he was self-insured and refused to cooperate with Lewis.

Debtor's obstinance and prevarications lead this court to assign little credibility to his affidavit and protestations that he was told that his insurance policy would not cover the collision. Originally, Debtor refused to cooperate with Lewis and told him that he was self-insured. Now, he asserts that he had insurance with Phoenix, but that he was told that coverage had been denied. However, uncontroverted evidence has been presented that proof of the ICNY policy was on file with Savannah Airport Commission. Such documentation was either filed by Debtor or someone at his bequest. Thus, based on the evidence introduced at trial, I find that, at the time of the collision, Debtor had insurance with ICNY and he was aware of such insurance. Further, Debtor sought to conceal the existence of such insurance to the detriment of Plaintiff.

### CONCLUSIONS OF LAW

█ Under 11 U.S.C. § 523(a)(6) this Court may refuse the Debtor a discharge from any debt, "for willful and malicious injury by the debtor to another entity or to the property of another entity." Federal law governs the determination of what constitutes "willful and malicious injury" under § 523(a)(6). See *Kawaauhau v. Geiger*, 523 U.S. 57, 60–61, 118 S.Ct. 974, 976, 140 L.Ed.2d 90 (1998) (holding that debt arising from doctor's malpractice and reckless conduct do not fall within

---

dresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(Plaintiff's Ex. C)

§ 523(a)(6) exception). Further, Plaintiff must prove by a preponderance of the evidence that his judgment debt should be excepted from discharge. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (holding that preponderance of the evidence standard, rather than clear and convincing evidence standard, applies to all exceptions from dischargeability in § 523(a)).

### Debtor Performed a Willful and Malicious Act By Failing to Disclose the Existence of Insurance

■ In *Geiger*, the Supreme Court limited the scope of what is willful and malicious for purposes of § 523(a)(6). Importantly, the Court held that, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 64, 118 S.Ct. at 978. Since that ruling, numerous decisions have attempted clarify what level of intent is required by § 523(a)(6). This Court has previously relied on the following standard: "An injury is 'willful and malicious' where there is either objective substantial certainty of harm or subjective motive to cause harm." *See Henderson v. Woolley (In re Woolley)*, 288 B.R. 294, 302 (Bankr.S.D.Ga.2001) (Davis, J.) (quoting *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir.1998)). Under this standard, if a debtor commits an intentional act and he or she can be shown to have actually intended harm, or if that act was substantially certain to result in harm, then the *Geiger* standard is met. *Id.*

Here, Debtor performed an act that had an objective substantial certainty of injur-

ing Plaintiff. Plaintiff first suffered injury when he was in an automobile accident. Plaintiff was awarded damages for such injury by the Order of the Chatham County State Court issued on October 23, 1997. Had that been Plaintiff's only injury, the debt in question would be dischargeable as there clearly is no proof that Debtor intended the physical injury sustained by Plaintiff. However, Plaintiff also suffered injury when Debtor failed to disclose that he in fact had insurance. Debtor's concealment of the existence of insurance prevented Plaintiff from collecting amounts owed to him pursuant to the State Court Judgment.

Arguably in this Circuit a failure to obtain insurance is not a willful and malicious act for purposes of § 523(a)(6). *See Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir.1995) (holding that failure to obtain statutorily required insurance is not a "willful and malicious injury"). This case, however, is distinguishable from *Walker*. In *Walker*, the act of the debtor which purportedly ran afoul of § 523(a)(6) was his failure to obtain insurance. Importantly, in *Walker*, the Debtor claimed that, "he did not insure his workers because he did not consider himself the general contractor for the construction project and because he believed that [plaintiff] and his coworkers were responsible for securing their own insurance." *Id.* at 1163. Thus, the court held that in failing to maintain insurance, debtor did not intend to injure the plaintiff. Instead, he only acted recklessly as his failure to maintain insurance was based upon a "putatively mistaken belief." *Id.* at 1164.[2] Like *Geiger*, the *Walker*

---

**2.** When the facts establish that an employer, knowing of his statutory obligation to carry worker's compensation insurance, knowingly fails to maintain such insurance, and sends workers entitled to such coverage into harm's way, I have held a willful and malicious injury has occurred. *See e.g., Hester v. Saturday (In re Saturday)*, 138 B.R. 132(Bankr.S.D.Ga.1991) (Davis, J.). Hopefully, if these facts were presented to the Eleventh Circuit, it would reach a result different

court emphasized that, "the debtor must have intended more than merely the act that results in injury" in order for a debt to be nondischargeable under § 523(a)(6). *Id.*

▮ In the instant case, Plaintiff does not contend that the injury was occasioned by Debtor's failure to carry insurance; instead, the injury was precipitated by Debtor's interference with Plaintiff's rights to pursue insurance coverage that was then in existence. Georgia Code § 33–3–28(a)(2) mandates that, "[t]he insured, within 30 days of receiving a written request from a claimant or the claimant's attorney, shall disclose to the claimant or his attorney the name of each known insurer which may be liable to the claimant upon such claim." Contrary to the mandate of Georgia law, Debtor did not comply with Lewis' request for insurance information and instead gave him false and misleading information.

At the July 31 trial, Debtor's counsel argued that there is no conceivable reason why Debtor would attempt to conceal the existence of insurance. This Court can conceive of several reasons why Debtor might seek to hide the existence of an insurance policy that would cover Plaintiff's injury. For example, Debtor might not have wanted Plaintiff to make a claim on his insurance for fear that his premiums would be increased or he would lose the benefit of coverage. Of course, it is impossible for this Court to discern Debtor's motive for concealing the existence of insurance since he failed to appear at the July 31 hearing. However, it has been established that where " 'there is no other plausible inference' to be drawn from the facts than that a debtor had substantially certain knowledge that harm would result, then the debtor's requisite knowledge that

than it did in *Hope v. Walker (In re Walker)*, 48

harm will result can and should be inferred." *See Woolley*, 288 B.R. at 302. Based on the evidence, Plaintiff has sustained his burden of proof. Thus, this Court must infer that Debtor knew that he in fact had insurance with ICNY and that by not telling Debtor about the existence of such insurance he would cause harm to Debtor.

Courts have consistently held that a debtor's concealment of information regarding a debt owed can be grounds to find such debt nondischargeable pursuant to § 523(a)(6). *See Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853 (1st Cir.1997) (holding that debtor willfully and maliciously injured brokerage firm by taking advantage of firm's error and not informing them of such error); *FDIC v. Smith (In re Smith)*, 160 B.R. 549 (N.D.Tex. 1993), *aff'd* 39 F.3d 320 (5th Cir.1994) (holding debtor's conduct willful and malicious based on concealment from federal banking authorities of true purpose and amount of loan); *DeBartolo v. Kyriazes (In re Kyriazes)*, 38 B.R. 353, 355 (Bankr. N.D.Ill.1983) (holding debt nondischargeable under § 523(a)(6) where debtor made false statements that plaintiff would be paid out of escrow). *But see Steier v. Best*, 287 B.R. 671 (W.D.Ky.2002) (holding debt dischargeable where debt did not arise out concealment of assets which judgment creditor might have looked to satisfy judgment). In the instant case, Debtor's concealment of insurance information caused harm to Plaintiff that was both willful and malicious.

### Debtor Caused Injury to Plaintiff's Property

▮ For a debt to be nondischargeable pursuant to § 523(a)(6), there must be an, "injury by the debtor *to another entity or to the property of another entity.*"

F.3d 1161 (11th Cir.1995).

§ 523(a)(6) (emphasis added). An "entity" described in § 523(a)(6) includes a "person, estate, trust, governmental unit, and the United States trustee." 11 U.S.C. § 101(15). Injuries to persons are typically reserved for assaults and batteries. Accordingly, Plaintiff here is alleging an injury to property and courts have construed § 523(a)(6) as requiring specifically identifiable property. However, injuries covered by § 523(a)(6) are not confined to physical damage or destruction. Instead, an injury to intangible personal or property rights is sufficient. *See Monsanto Co. v. Trantham (In re Trantham)*, 286 B.R. 650, 659 (Bankr.W.D.Tenn.2002) (*citing* 3 COLLIER ON BANKRUPTCY ¶ 523–12[2] (15th Ed. Rev. 2002)).

■ In *Walker*, the Court held that there is no binding authority to indicate that, "statutorily required workers' compensation benefits are property, distinguishable from the rights of any other creditor against a debtor." 48 F.3d at 1165. It is true that in Georgia, "[t]he general rule is that [, where] there is no privity of contract, a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." *Hartford Ins. Co. v. Henderson & Son, Inc.*, 258 Ga. 493, 494, 371 S.E.2d 401, 402 (1988). Accordingly, Plaintiff here had no direct cause of action against Debtor's insurance company until the judgment in the Chatham County State Court was entered. Since Debtor failed to disclose the existence of his insurance company before the entry of judgment, such nondisclosure did not injure a then exiting right to collect on a judgment from an insurance company.

■ While Plaintiff did not have a right of action against the insurance company at the time of Debtor's nondisclosure, he did have a cognizable property interest in the ICNY policy that was predicated only upon his obtaining a judgment against Debtor and giving notice to ICNY of the collision. Because O.C.G.A § 33–3–28(a)(2) establishes that an insured has a duty to disclose the name of each known insurer, Georgia law recognizes a measure of privity, even in the absence of a direct right of action, between an injured party and the applicable insurance company at the moment the physical injury is sustained. If an injured party or the insured fail to notify the insurer, the injured party loses the right to claim a valuable property right, even before the condition precedent (the judgment) is met. It is customary that, after a collision of this sort, an injured party and the applicable insurance company are in close contact. Often documents are transferred and investigated in anticipation of a settlement or court judgment. Here, Debtor prevented Plaintiff from establishing any such contact with ICNY.

Unlike *Walker*, Plaintiff is not alleging that he had a property interest in a non-existent insurance policy that Debtor had a duty to provide. Instead, Debtor had insurance, but Plaintiff was unable preserve his potential interest in such insurance because of Debtor's willful and malicious concealment and interference with the efforts of Plaintiff and his counsel. In short, had Plaintiff known that Debtor had an insurance policy with ICNY, he would have ultimately been entitled to collect to the extent of Debtor's policy limit for an individual ($15,000).

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Plaintiff's judgment award rendered in the Chatham

County, Georgia State Court is nondischargeable to the extent of $15,000.00.