**In the Matter of James Morely WOOLLEY, Debtor.**

**Lanae Henderson, Plaintiff,**

v.

**James Morely Woolley, Defendant.**

**Bankruptcy No. 00–21343.**
**Adversary No. 01–2001.**

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

Nov. 2, 2001.

William B. Johnson, Jesup, GA, for Debtor.

R. Michael Souther, Brunswick, GA, trustee.

### MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Creditor/Plaintiff LaNae Henderson ("Plaintiff") petitions this Court to except her judgment debt from discharge in the Chapter 7 bankruptcy case filed by Debtor/Defendant James M. Woolley ("Debtor") on the basis that Debtor's actions underlying the judgment constituted the infliction of "willful and malicious injury" to Plaintiff. This Court has jurisdiction in this core adversary proceeding under 28 U.S.C. § 157(b).

### BACKGROUND

Plaintiff filed the action underlying her damages award[1] ("the prior case" or "the prior action") in the United States District

---

1. Case No. 2:92CV1055 (D.Conn.). The case was filed "in or about 1992." Pl.'s Br. in Supp. of Mot. for Summ. J.

Court for the District of Connecticut ("District Court") under a Connecticut statutory provision which extends the statute of limitations for personal injury caused by sexual abuse, sexual exploitation, and sexual assault perpetrated upon a minor for seventeen years past the age of majority. *See* Br. of Debtor/Def. at 2. Her original Complaint[2] contained six counts against Debtor, Plaintiff's father. Pl.'s Br. in Supp. of Mot. for Summ, J. at 2. Debtor filed motions to dismiss, including one motion to dismiss the case in its entirety on grounds of parental immunity from tort liability. *Id.* The court dismissed two counts, Ruling on Def.'s Mot. to Dismiss at 5–6 (July 27, 1993), and certified the question of parental immunity for sexual abuse to the Connecticut Supreme Court, which advised that parental immunity does not bar such an action, *Henderson v. Woolley,* 230 Conn. 472, 486, 644 A.2d 1303, 1309 (1994). After the case was set for trial and jury selection, Debtor elected not to appear at trial or defend the lawsuit and instructed his attorney to file a withdrawal motion. Ruling on Damages at 2 (Dec. 16, 1997) (Burns, C.J.) [hereinafter "Ruling on Damages"]. A default was entered against Debtor, and the District Court awarded Plaintiff compensatory damages in the amount of $250,000 "for the sexual and physical abuse suffered by her at the hands of her father, . . . . the past, present and future pain and suffering and the extreme emotional distress which she has had to, and continues to, cope with," Ruling on Damages at 8, and punitive damages in the amount of $66,281.25 for court costs and attorney fees, Supplemental J. (Jan. 28, 1998).

On January 8, 2001, Debtor filed for Chapter 7 bankruptcy protection and sought to have the judgment debt to Plaintiff discharged. Plaintiff has petitioned this Court to declare the debt nondischargeable under 11 U.S.C. § 523(a)(6) and now moves for summary judgment.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), a federal trial court may grant summary judgment if the record before the court, including pleadings, admissions on file, and affidavits, shows that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *See Transam. Leasing, Inc. v. Inst. of London Underwriters,* 267 F.3d 1303, 1307–08 (11th Cir. 2001). The movant may satisfy his initial burden of production by presenting specific evidence on a particular issue or by pointing out an absence of evidence to support the non-moving party's case. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); instead, "[a] genuine issue exists when the evidence is such that a reasonable [fact finder] could find for the non-

**2.** Plaintiff's Complaint included claims for child abuse, breach of parental duty, false imprisonment, incestuous abuse, intentional infliction of emotional distress, and negligent infliction of emotional distress. The claims for breach of parental duty and false impris-

onment were dismissed in 1993 for failure to state a claim. *See* Ruling on Def.'s Mot. to Dismiss at 5–6 (July 27, 1993) (Covello, J.), and Plaintiff did not pursue the claim for incestuous abuse, *see* Ruling on Damages at 1–2 (Dec. 16, 1997) (Burns, J.).

movant," *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record, the court must draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable," *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

11 U.S.C. § 523(a)(6) excepts from discharge in bankruptcy a debt resulting from the debtor's "willful and malicious injury" to a creditor. Here, Plaintiff contends that issues decided in the prior case prove that Debtor willfully and maliciously injured her, that the District Court judgment collaterally estops Debtor from relitigating any issue decided in that case, and that no genuine issue with respect to dischargeability under § 523(a)(6) remains for this Court to decide. In support of her contention, Plaintiff asserts that at all times relevant to the prior action, up to and including the judgment for damages,

her allegations concerning Debtor's intentional infliction of mental distress was an integral part of her Complaint.[3] Aff. of [Pl.'s Att'y] Richard J. Tuneski.

Debtor contends that because Connecticut law provides that damages may be awarded for intentional infliction of emotional distress if the actor "knew or *should have known* that emotional distress was the likely result of his conduct," Letter Br. of Debtor/Def. (Aug. 9, 2001), the damages award could have been based on Debtor's negligent or reckless state of mind as to causing injury, and hence, the issue of Debtor's intent to cause "willful and malicious injury" remains as a triable issue in the instant action.[4]

### a. Collateral Estoppel

The debt which Plaintiff seeks to except from discharge resulted from a judgment in a federal diversity case applying Connecticut tort law. Under principles of collateral estoppel (issue preclusion), which apply to bankruptcy proceedings in which

---

**3.** The record in this case includes, in addition to the various filings, briefs, and oral arguments in the instant adversary proceeding, the following items regarding the prior action: the ruling on the defendant's motion to dismiss by District Judge Alfred V. Covello of the United States District Court for the District of Connecticut [hereinafter "District Court"] (July 27, 1993); the judgment order (Dec. 31, 1997) (filed February 26, 1998), the supplemental judgment order on damages (filed February 26, 1998), the ruling on damages by Senior District Court Judge Ellen Bree Burns (Dec. 16, 1997), Plaintiff's attorney's affidavit, and Plaintiff's affidavit.

**4.** Debtor also contends that because Plaintiff's Complaint is not in the record, Mr. Tunesky's affiance is not proof that mental distress was the basis for Plaintiff's recovery, and that, in any event, recovery for the tort of intentional infliction of emotional distress was not possible under Connecticut law due to a statute of limitations bar. *See* Br. of Debtor/Defendant at 4 (filed June 14, 2001).

These contentions are without merit. First, because Mr. Tunesky, as attorney of record in the prior case, had personal knowledge of the contents of Plaintiff's Complaint and events in the prior case, this Court may consider and accord evidentiary weight to the sworn statements in his affidavit with respect to the mental distress claim as a basis for Plaintiff's recovery. Further, because Debtor does not controvert the affiance but merely objects to the absence of Plaintiff's Complaint in the Record before this Court, the affiance stands as uncontroverted evidence.

Second, the Ruling on Damages supports Mr. Tunesky's affiance that "Plaintiff's allegations concerning the infliction of mental distress was an integral part of Plaintiff's Complaint and remained so through to Judgment." The damages award was based on the child abuse claim, and the District Court considered "the past, present and future pain and suffering and the extreme emotional distress" suffered by Plaintiff in its determination of the amount of the award. *See* Ruling on Damages at 8.

exception from discharge is sought under 11 U.S.C. § 523(a)(6), *see Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991), issues decided in the prior decision may not be relitigated here, *see Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1322 (11th Cir.1995).

■ Federal and Connecticut law [5] provide that collateral estoppel applies when the identical issue sought to be litigated in the action at bar was "actually litigated" and "necessarily decided" in a prior action between identical parties.[6] *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979) (stating federal preclusion requirements); *In re Bush,* 62 F.3d at 1322 (discussing federal preclusion); *R and R Pool & Patio, Inc. v. Ridgefield Zoning Bd. of Appeals,* 257 Conn. 456, 466, 778 A.2d 61, 68–69 (2001) (discussing Connecticut preclusion). "[W]hether to allow issue preclusion is within the sound discretion of the trial court." *In re Bush,* 62 F.3d at 1325 n. 8.

### i. "Actually Litigated" Requirement

*(1) As a threshold matter, satisfaction of the "actually litigated" requirement is not precluded in this case by the fact that the damages award underlying Debtor's debt to Plaintiff was rendered in a default judgment.*

■ The prior action in the instant case ended in a default judgment and award of damages. Both the Connecticut Supreme Court and federal courts, including the Eleventh Circuit Court of Appeals, have held that under some circumstances, a trial court may give preclusive effect to a default judgment. Those circumstances include instances in which a party opposing preclusion had adequate opportunity to litigate the issue in the prior proceeding, *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 717–18, 627 A.2d 374, 380 (1993), and circumstances in which a party "knowingly chose not to defend himself in the first instance," *In re Bush,* 62 F.3d at 1324–25 (discussing debtor's participation in prior case and his obstructive conduct that resulted in default judgment as sanction in that case). Provided that the parties could reasonably have foreseen the conclusive effect of their actions, so as to satisfy the requirements for due process, collateral estoppel may apply to default judgments. *See id.* at 1325 ("Justice ... is probably better served if ... collateral estoppel does not apply to ... default judgments ... unless ... the parties could reasonably have foreseen the conclusive effect of their actions.") (quoting *Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir.1987)).

Here, Debtor knowingly participated in the prior action and had ample opportunity to defend on the merits. He moved to dismiss each count and his motions were successful with respect to two counts. He pursued dismissal of the entire case under the Connecticut doctrine of parental immu-

---

**5.** Although federal law controls the determination of whether state or federal law of issue preclusion is to be applied to federal diversity court judgments, *see Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 1027–28, 149 L.Ed.2d 32 (2001), and federal law directs that state preclusion law applies to a federal court's prior *dismissal* on the merits, *id.,* 121 S.Ct. at 1029, the Supreme Court has not clarified whether federal law mandates application of federal preclu-

sion law or state preclusion law to a *default* judgment rendered in a diversity case.

**6.** Federal preclusion law requires, in addition, that "[t]he burden of persuasion in the discharge proceeding must not be significantly heavier than ... in the initial action." *In re Bush,* 62 F.3d at 1322. Because preponderance of the evidence is the standard in both actions, this requirement is not at issue here.

nity and presented arguments to the Connecticut Supreme Court. Not until after that court subsequently advised that "the parental immunity doctrine does not bar an action by a minor child against [her] parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation," *Woolley*, 230 Conn. at 486, 644 A.2d 1303, and jury selection had been set did Debtor elect not to appear at trial or defend the lawsuit.

Furthermore, Debtor chose not to defend despite the foreseeability of the conclusive effect of his decision to withdraw. *See* Ruling on Damages at 2 (noting that "defense counsel had thoroughly advised [Debtor] as to the ramifications of such a decision"). Debtor may therefore be held to the consequences of the default judgment in this bankruptcy proceeding without offending due process.

Debtor's participation in the prior case was substantial, and the consequences of his withdrawal in a subsequent bankruptcy proceeding were reasonably foreseeable. Therefore, the default nature of the prior judgment does not preclude a finding that the prior case was actually litigated.

*(2) The fact, nature, and extent of Debtor's sexual and physical abuse of Plaintiff were "actually litigated" in the prior proceeding.*

■ An issue was "actually litigated" if it "was effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion." *In re Bush*, 62 F.3d at 1323. Before issuing the Order in the prior case, the District Court established the following facts and conclusions: (1) Plaintiff's claim arose out of the physical and sexual abuse inflicted upon her by Debtor when Plaintiff was a child, Ruling on Damages at 1; (2) Plaintiff suffered trespassory abuse by Debtor in the form of severe beatings, *id.* at 2, and sexual

assault and molestation, *id.* at 1, 3, & 4; (3) Debtor warned Plaintiff not to tell anyone about the abuse and threatened to kill her if she ran away, *id.* at 4; (4) the sexual abuse was continual over a period of ten years, *id.* at 1, 3–4, and escalated to "extreme [sexual] abuse" in the final two years, *id.* at 4; (5) Debtor was personally aware of Plaintiff's distress during the last several years of the abuse, *id.* at 3–4; and (6) Plaintiff suffered extreme emotional distress, *id.* at 8, and insidious and pervasive psychological damage, directly attributable to Debtor's abuse, which included speech difficulties, non-cohesive thought organization, guilt and shame regarding her childhood, lack of sense of control over her adult world, post-traumatic stress syndrome, and extended depression, *id.* at 1, 7, 8. Because these facts and conclusions were effectively raised and thoroughly developed in the District Court and because the "actual litigation" requirement was satisfied by Debtor's substantial participation in the prior case in which he was afforded a reasonable opportunity to defend himself on the merits but chose not to do so, *see In re Bush*, 62 F.3d at 1324, I hold that these facts and conclusions were "actually litigated."

### ii. "Necessarily Decided" Requirement

*The fact, nature, and extent of Debtor's sexual and physical abuse were "necessarily decided" in the prior case.*

■ An issue is "necessarily decided" if, in the absence of a determination of the issue, the judgment could not have been validly rendered, *R and R Pool & Patio*, 257 Conn. at 466, 778 A.2d 61; *see also Jackson*, 225 Conn. at 719–20, 627 A.2d 374 (stating that trial court applying collateral estoppel must make findings that default judgment necessarily determined all issues). A court may "infer facts for purposes of collateral estoppel if the finding is

necessarily implied from the nature of the claim and award." *Schlenkerman v. Goldbronn (In re Goldbronn), 263 B.R. 347, 360 (Bankr.M.D.Fla.2001) (internal quotation marks omitted) (finding, in absence of factual findings by arbitration panel, that award itself established "those facts necessary to support a violation under [the relevant state statute]"). On the other hand, "[i]f an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action" because "[f]indings on nonessential issues usually have the characteristics of dicta." *Jackson*, 225 Conn. at 715, 627 A.2d 374 (citation omitted).

In the prior case, the conclusions established in the Ruling on Damages were integral to the award of damages. The facts recited by the District Court were not extraneous to its conclusion that Plaintiff had suffered sexual and physical abuse resulting in past, present and future pain and suffering and extreme emotional distress, but were directly probative of the elements necessary to find, and the court's legal conclusion of, sexual abuse. Thus, the facts of Debtor's abuse and Plaintiff's resulting distress were "necessarily decided."

■ Therefore, because the facts of Debtor's sexual and physical abuse of Plaintiff and of her resulting emotional distress were "actually litigated" and "necessarily decided," the judgment rendered by the District Court and the facts and conclusions set forth in the Ruling on Damages are binding on Debtor and may not be relitigated.

**b. Willful and Malicious Injury Under § 523(a)(6)**

The ultimate issue is whether the District Court's conclusion that Debtor caused harm to Plaintiff in the form of physical and sexual abuse and the indisputable facts and conclusions related in the opinion, combined with other evidence in the record before this Court, are sufficient, as a matter of law, to support the granting of summary judgment with respect to Debtor's commission of a "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6).

■ Federal law governs the determination of what constitutes "willful and malicious injury" under § 523(a)(6). *See Kawaauhau v. Geiger*, 523 U.S. 57, 60–61, 118 S.Ct. 974, 976, 140 L.Ed.2d 90 (1998) (construing "willful and malicious injury" under § 523(a)(6)). In *Geiger*, the Court limited the scope of "willful and malicious injury." First, because "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury," injury that is recklessly or negligently inflicted does not meet the "willful and malicious injury" standard. *Id.* at 61, 118 S.Ct. 974 (emphases in original). Injury resulting from trespassory intentional torts, on the other hand, generally qualify under the "willful and malicious injury" standard, provided that the debtor desired or anticipated injury. *See id.* at 62, 118 S.Ct. 974 (excluding from § 523(a)(6) exception "situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor").

■ Numerous post-*Geiger* decisions have attempted to amplify and further articulate the precise state of mind required by the *Geiger* standard in order to determine whether an injury is willfully and maliciously inflicted. It is clear that engaging in a voluntary act with the desire to cause harm or the knowledge that injury will occur to a *targeted* person is sufficiently "willful and malicious." *See Johnson v. Fors (In re Fors)*, 259 B.R. 131, 136 (8th Cir. BAP 2001) (quoting with approval pre-*Geiger* Eighth Circuit definitions of "willful" and "malicious" as "headstrong

and knowing" conduct "targeted at the creditor"). In addition, a debtor's belief that harm is *substantially certain* to occur to a targeted person as a result of the voluntary act is also sufficient. *See id.; Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 464 (6th Cir.1999) (holding that "unless the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)" (internal citation omitted)). Further, where "there is no other plausible inference" to be drawn from the facts than that a debtor had substantially certain knowledge that harm would result, then the debtor's requisite knowledge that harm will result can and should be inferred. *See In re Haemonetics Corp. v. Dupre (In re Dupre),* 229 F.3d 1133, *available at* 2000 WL 1160447, at *2 (1st Cir. 2000) (unpublished opinion).

Another articulation of the post-*Geiger* standard, and the standard on which this Court has relied, was stated in *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598 (5th Cir.1998): "An injury is 'willful and malicious' where there is either objective substantial certainty of harm or subjective motive to cause harm." *Id.* at 606 (inferring debtor's requisite malice by equating "intending actual injury" with "[taking] action that necessarily caused, or was substantially certain to cause, the injury"), *cited with approval in First Liberty Bank v. LaGrone (In re LaGrone),* 230 B.R. 900, 904 (Bankr.S.D.Ga.1999) (Davis, J.); *accord, Ford Motor Credit Co. v. Moody (In re Moody),* 277 B.R. 865, 869 (Bankr.S.D.Ga.2001) (Walker, J.). Under this standard, if a debtor commits an in-

tentional act and he or she can be shown to have actually intended harm, or if that act was substantially certain to result in harm, then the *Geiger* standard is met.

The Fifth Circuit standard is similar to that articulated by the Eleventh Circuit before *Geiger* was decided. In *Hope v. Walker (In re Walker),* 48 F.3d 1161 (11th Cir.1995), "willful injury" is defined as "commi[ssion of] an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 1165. Importantly, because the *Geiger* opinion excludes from the § 523(a)(6) exception "situations in which an act is intentional, but injury is unintentional, *i.e.,* neither desired nor *in fact anticipated by the debtor,*" *Geiger,* 523 U.S. at 58, 118 S.Ct. 974 (emphasis added), there is doubt that an unqualified objective substantial certainty standard fulfills the "willful and malicious injury" requirement. The *In re Walker* court, while stating the substantial certainty standard in objective terms, actually decided the case according to subjective substantial certainty, *see id.* at 1165 (implying that injury which results as a "necessary and direct result" of debtor's act without debtor's personal substantial certainty that injury will result is merely an attempt to recast previously rejected "reckless disregard" standard).[7]

■ This Court, mindful that summary judgment should be granted with caution where questions of intent or motive are presented, *Hammer v. Slater,* 20 F.3d 1137, 1144 (11th Cir.1994), now addresses the "willful and malicious" issue based on the entirety of the record.

The issue before the District Court in rendering the Ruling on Damages was to determine whether the record supported

---

7. The *In re Walker* court relied on the following language from the Restatement of Torts, as quoted in a Third Circuit opinion, in support of its conclusion: "The word 'intent' … denote[s] that the actor desires to cause con-

sequences of his act, or that *[the actor] believes* that the consequences are substantially certain to result from it." *In re Walker,* 48 F.3d at 1165 (emphasis added).

an award of damages, and, if so, the appropriate amount of those damages. After hearing undisputed testimony from Plaintiff and her psychologist, the District Court entered an Order awarding Plaintiff "compensatory damages in the amount of $250,000.00 for the sexual and physical abuse suffered by her at the hands of her father, Defendant James Woolley, the past, present and future pain and suffering and the extreme emotional distress which she has had to, and continues to, cope with." Ruling on Damages at 8. From the undisputed testimony presented to that court and outlined in pages 2 through 8 of the Ruling on Damages, which are incorporated herein, I make the following findings.

*(1) The Ruling on Damages conclusively establishes that Debtor's acts were willful in that they targeted Plaintiff and were direct, trespassory, and intentional, not merely reckless, negligent, or neglectful.*[8] Debtor beat Plaintiff "around the legs and buttocks with a leather strap, sometimes drawing blood." *Id.* at 2. He did " 'whatever he wanted to do [sexually],' manually and orally," beginning when Plaintiff was four years of age, in her bedroom late at night. *Id.* at 3. He persisted in the abuse when she pretended to be asleep. *Id.* He

had sexual intercourse with Plaintiff. *Id.* at 4. He repeated the acts of abuse continually over a period of years. *Id.* He warned Plaintiff not to tell anyone about the continuing abuse and threatened to kill her if she ran away. *Id.*

*(2) The only plausible inference from the facts and conclusions set out in the Ruling on Damages is that Debtor's acts were certain or substantially certain to result in injury to Plaintiff.* "It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended." *Patrons Mut. Ins. Co. of Conn. v. Maguire,* 1997 WL 162821 at *3 (Conn.Super.1997). "[S]exual misconduct with a minor is objectively . . . certain to result in harm to the minor victim [and] the perpetrator . . . is expected to know that." *Id.* Here, the only reasonable inference is that continual acts of sexual assault of one's minor daughter over a period of ten years, combined with severe physical abuse, a warning not to tell others, and a threat to her life, would cause that child to suffer harm. That harm encompasses, as an "inevitable product" of the abuse itself, mental and emotional distress.

*(3) The Ruling on Damages establishes that Debtor was actually aware that his*

---

**8.** The Ruling on Damages gives the following account of Plaintiff's testimony:

> The sexual abuse of LaNae began when she was four years old. Her father would come to her room late at night, wake her up and molest her, "doing whatever he wanted to do," manually and orally. If she pretended to remain asleep her father would persist in the molestation in any event. Plaintiff testified that she felt shameful, humiliated, powerless and "not really there at the time." Because the only time her father was not cold and violent was when he was molesting her[,] she was very confused about his affections for her.
>
> When she was seven years old[,] she confided what was happening to her in her mother. Her mother confronted her father,

> who cried at the time and agreed to see their minister. He saw the minister once and, upon the minister's recommendation, saw a psychiatrist once. He ceased molesting LaNae for the following six months but began again after this short period. Her father warned her to never again tell anyone and when she threatened to run away, he told her that if she did, and if he found her, he would kill her. . . .
>
> The sexual abuse continued for the next five years, and when Plaintiff was twelve years old Defendant started having sexual intercourse with her. Such extreme abuse continued until LaNae was fourteen, when her mother finally divorced her father and LaNae was physically separated from him.

Ruling on Damages at 3–4.

*abusive acts were damaging to Plaintiff and thus were malicious.* Debtor's responses to Plaintiff's distress at the continuing abuse were telling: When Plaintiff complained to her mother, Debtor responded by crying, going to two counselors, and refraining from abusing his daughter for several months. Ruling on Damages at 3–4. Then, after Debtor resumed his abuse and Plaintiff threatened to run away, Debtor threatened to kill her if she did. *Id.* at 4. These undisputed facts show that Debtor voluntarily resumed the abuse despite knowledge of the distress he was causing Plaintiff, that he directly inflicted injury upon his daughter, and that by so doing, he inflicted willful and malicious injury upon her.

Although Debtor denies that his intent to injure his daughter could be "obvious," because the intent of a child molester could be anything from "the ultimate act of self absorption, simple depravity, sexual deviance, learned behavior from the actor's own childhood, or some combination of factors [which] may never be known," Debtor's Br. at 5, "[a]s the probability of injury to another, apparent from the facts within the acting party's knowledge, becomes greater, [the actor's] conduct takes on more of the attributes of intent, until it approaches and finally becomes indistinguishable from the substantial certainty of harm that underlies intent." *Allstate Ins. Co. v. Plude,* 1995 WL 50098, at *4 (Conn.Super.1995).

The Ruling on Damages in the prior case sets forth facts and conclusions which establish, as a matter of law, that Debtor's actions constituted willful and malicious injury. The abuse was willful in that it was intentional, continual, and trespassory. The abuse was malicious in that it was inherently injurious, and targeted at Plaintiff despite Debtor's knowledge that his actions caused Plaintiff to suffer injury and in that Debtor threatened to kill Plaintiff if she ran away.[9]

## CONCLUSION

Therefore, I find that Debtor's acts constituted a willful and malicious injury as contemplated in § 523(a)(6) and interpreted in *Geiger* and subsequent decisions, that no genuine issue of material fact as to any element of willful and malicious injury remains to be decided with respect to dis-

---

9. The dearth of express language in the Ruling on Damages regarding Debtor's intent is not determinative. The District Court necessarily applied Connecticut law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938) (holding that federal court sitting in diversity must apply substantive law of state in which it sits). In Connecticut, sexual assault is an intentional tort, *cf. Woolley,* 230 Conn. at 480, 644 A.2d 1303 (addressing sexual abuse, assault, and exploitation as example of intentional or willful parental misconduct), and a child molester's intent is inextricably woven into the requirements for finding sexual abuse, *see Fernandez v. Standard Fire Ins. Co.,* 44 Conn. App. 220, 224 n. 4, 688 A.2d 349 (1997) (noting that elements of Connecticut sexual assault tort are harmful or offensive contact with a person, intended to cause the plaintiff to suffer such a contact, resulting from an act); *Doe v. Boy Scouts of Amer.,* 1999 WL 61473, at *2 (Conn.Super.1999) (identifying "sexual abuse" as "particular type of harm" upon which court action may be based); *Maguire,* 1997 WL 162821, at *4 ("[S]exual molestation of a child .... is objectively .... certain to result in harm to the minor victim [and] the perpetrator ... is expected to know that."); *Plude,* 1995 WL 50098, at *1 ("The act of intercourse with a minor is in and of itself proof of intent and injury as a matter of law."). In *Woolley,* the Connecticut Supreme Court rendered an advisory opinion in Plaintiff's suit against Debtor on the question of whether parental immunity applies for sexual abuse, sexual assault, and sexual exploitation claims. The opinion was telling for two reasons. First, because the scope of the parental immunity doctrine at that time already encompassed "negligent acts or omissions that occurred while the child was an unemancipated minor," *id.* at 474 n. 2, 644 A.2d 1303,

chargeability under U.S.C. § 523(a)(6), and that Plaintiff is entitled to summary judgment as a matter of law.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted and that Debtor is collaterally estopped from litigating the issue of his intent to cause injury to Plaintiff in this Court. Plaintiff's judgment award rendered in the prior District Court case is nondischargeable in Debtor's bankruptcy case, and Defendant remains obligated for the full repayment of those sums, with interest after judgment, until paid in full.

the court considered only fault beyond negligence. Also, permeating the opinion was the theme that other jurisdictions had abrogated parental immunity in cases where willfulness, wantonness, and intentional actions worked against the policies underlying parental immunity. *See id.* at 476 n. 6, 476 n. 7, 476–83, 644 A.2d 1303; *Lawson v. Lawson,* 2001 WL 88266, at *4 (Conn.Super.2001) ("While the certified question reads broadly, the [*Woolley* ] case was factually limited to the intentional conduct of the perpetrator.").