In re James D. BOGGUS, Jr.
and Jennifer Sullivan
Boggus, Debtors.

Gregory Blosser, Plaintiff,

v.

James D. Boggus, Jr., Defendant.

Bankruptcy No. G10–23510–REB.
Adversary No. 10–2178.

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

May 21, 2012.

Brent James, Harriss & Hartman Law Firm, PC, Rossville, GA, David L. McGee, Jodi Daniel Cooke, Beggs & Lane, RLLP, Pensacola, FL, for Plaintiff.

G. Marshall Kent, Jr., Tracy A. Marion, Smith Moore Leatherwood LLP, Atlanta, GA, for Defendant.

### ORDER DENYING DEFENDANT–DEBTOR'S MOTION TO DISMISS AND DENYING IN PART AND GRANTING IN PART DEFENDANT–DEBTOR'S MOTION FOR SUMMARY JUDGMENT

ROBERT E. BRIZENDINE, Bankruptcy Judge.

Before the Court is the motion of Defendant–Debtor James D. Boggus, Jr. filed on

September 28, 2011 to dismiss the above-styled adversary proceeding and/or for entry of summary judgment. Plaintiff Gregory Blosser commenced this proceeding by filing a complaint to determine dischargeability of debt against Debtor on November 12, 2010, and subsequently filed an amended complaint, on which Debtor's motion is based, on September 9, 2011. In his motion, Debtor contends that he is entitled either to a dismissal of Plaintiff's complaint or entry of summary judgment on the issue of nondischargeability pertaining to those claims asserted by Plaintiff. These claims arise in relation to actions previously alleged to have been taken by Debtor in contravention of a certain Construction Loan Agreement between South Place, LLC, an entity formed for developing real property in the state of Florida and in which Plaintiff formerly held an interest, and BanCorpSouth, Inc., and more specifically in connection with a subsequent Settlement Agreement and Mutual Release in January of 2008.[1] Based upon a review of the record, the Court concludes that Debtor's motion to dismiss should be denied, and that Debtor's motion for summary judgment should be granted on count II of the amended complaint, but should be denied on count I, which remaining matter will be set for trial.

## I. *Plaintiff's Allegations*

Plaintiff alleges that Debtor and/or Barbara Stokes, who each held a 50% ownership interest in South Place, with Debtor holding his interest through DJT Investments as noted below, approached Plaintiff in 2006 about investing in South Place so that it could obtain needed construction financing. Plaintiff and his company, Paragon Development, thereafter entered into a Joint Venture Agreement with DJT Investments and Stokes, executing a promissory note payable to Debtor and Stokes in the sum of $719,763.34 with a due date of December 31, 2007. The note was secured by their membership interests in South Place and could be funded from proceeds generated by the sale of town homes through the project. As part of this transaction, Stokes and DJT assigned 25% of their interest in South Place to Plaintiff and Paragon, respectively. Then, in accordance with the Joint Venture Agreement, Plaintiff and Paragon, along with Debtor and Stokes, each executed personal unconditional and continuing guaranties to BanCorpSouth in connection with a construction loan agreement entered into between South Place and BanCorpSouth in the amount of $6,592,800.00.

Plaintiff alleges that Stokes immediately made a certain draw on the loan made to South Place, which Debtor deposited into the account of Carrabelle Landings, LLC, and that Debtor or Stokes wrote two checks on these funds for their personal use without his knowledge. Additionally, in 2007 Stokes allegedly made "demand" for early payment on Plaintiff's note payable to Debtor and Stokes because the construction project could not be completed without additional funds.[2] Plaintiff discovered the alleged improper draw and demanded his investment in South Place be cancelled, and on January 25, 2008, the parties entered into the above-referenced Settlement Agreement and Mutual Release. Plaintiff refused his consent for a proposed refinancing of the bank loan as same would require his continuing guaranty.

---

1. Along with Plaintiff and his related corporate entity Paragon Development, Inc., the parties to this agreement included Barbara Stokes and DJT Investments, LLLP, a limited liability limited partnership in which Debtor and his wife are partners.

2. Debtor states that Plaintiff defaulted on his obligation.

Plaintiff's note was cancelled and he and Paragon reassigned their interests in South Place to DJT Investments and Stokes, but Plaintiff claims that Debtor and Stokes caused South Place to grant a second mortgage against the subject real property in violation of the settlement. Afterwards, Debtor and Stokes failed to secure refinancing and they did not secure Plaintiff's release on the guaranties with the bank as they had agreed. South Place eventually defaulted on the BanCorpSouth loan, whereupon the bank commenced a foreclosure action against South Place, Plaintiff, Paragon, Debtor, and Stokes, seeking, among other things, a judgment against Plaintiff for the total amount due under the construction loan pursuant to the guaranties of Plaintiff and Paragon.[3] Plaintiff further alleges that Debtor failed to honor his promise to indemnify Plaintiff as set forth in the Settlement Agreement and Mutual Release and is now attempting to discharge this obligation through the filing of his Chapter 7 bankruptcy case on August 6, 2010.

Regarding the specific allegations of his amended complaint, Plaintiff contends in count I that his claim for indemnification of any liability incurred under the guaranties should be excepted from discharge herein under 11 U.S.C. § 523(a)(2)(A). Plaintiff alleges that Debtor made implied misrepresentations, false representations, committed actual fraud, and made false pretenses to induce Plaintiff to rely to his detriment in entering into the Settlement and Release, regarding Debtor's ability and willingness to secure Plaintiff's release from his guaranty, to indemnify Plaintiff, and to refrain from having additional liens placed on the South Place property. In exchange for these promises, Plaintiff states he agreed to forbear from taking

legal action against Debtor for the allegedly improper draw under the Joint Venture Agreement on the construction loan, and reassigned his ownership interest along with Paragon in South Place to Debtor and Stokes.

In count II, Plaintiff alleges that his claim for indemnification should be excepted from discharge under Section 523(a)(6) as same arises in connection with Debtor's wrongful actions under the South Place Joint Venture Agreement. These actions, Plaintiff states, "caused a chain reaction" leading to a shortage of funds, the failure of the Project, a loss of value in Plaintiff's ownership interests and ultimately, a default on the bank loan and Plaintiff's resulting liability under the guaranties. In essence, Plaintiff contends that he substituted his claims against Debtor based on Debtor's alleged wrongful actions under the Joint Venture Agreement with Debtor's promise to indemnify Plaintiff for any damages caused thereby, including the foreclosure on the South Place project due to its default on the construction loan to BanCorpSouth.

## II. *Debtor's Response*

In response, Debtor first argues that Plaintiff has failed to plead his allegations of fraud with sufficient particularity as required under Fed.R.Bankr.P. 7009, which adopts Fed.R.Civ.P. 9. Next, he contends, among other things, that even if the amended complaint withstands the motion to dismiss, Plaintiff has not presented adequate evidence to support a claim for relief regarding the nondischargeability of his claim by reason of the failed indemnification or Debtor's failed promise to obtain a release on Plaintiff's guaranty from Ban-CorpSouth. Indeed, Debtor further states, Plaintiff cannot do so because the

**3.** The record does not reflect that the Ban-CorpSouth has to date actually collected any

sums from Plaintiff based on the foreclosure action.

operation of the merger clause set forth in paragraph 7 of the Settlement Agreement restricts interpretation of the parties' agreement to the written terms of said Agreement. As such, it bars consideration of unstated, prior discussions or understandings. According to Debtor, at most, the terms of the Agreement reflect a promise to seek to obtain the release. Although this promise to hold harmless as contained in paragraphs 3.3 and 3.4 have admittedly been breached, there is no evidence to suggest it was made on a fraudulent basis that would support a cause for relief under Section 523(a)(2)(A).

Debtor affirms that Plaintiff's note was cancelled in exchange for the return of Plaintiff's interest, for which nothing was ever paid, and states Debtor "had no choice" but to enter into the Settlement Agreement to gain cooperation in averting a foreclosure. Debtor also contends that the second mortgage incurred by South Place was nonetheless procured in good faith to avoid foreclosure, and that it has since been satisfied and no damages were incurred by Plaintiff. In addition, Debtor maintains he tried but was unsuccessful in refinancing the BanCorpSouth loan, and told Plaintiff he could not force the bank to release Plaintiff from his guaranty, thus precluding any justifiable reliance by Plaintiff on such promise.

The nondischargeability of the indemnification claim under Section 523(a)(6) arises in relation to certain alleged fraudulent actions under the Joint Venture Agreement as referenced above. Debtor argues that any debt created in connection with the disputed draw and payments by check does not share a proximate causal relationship with the subsequent indemnity claim on the construction loan in the Settlement Agreement as this claim occurred after the draw was taken and deposited, and the checks thereon issued. Further, Debtor contests the allegation that he caused the underlying alleged fraudulent actions. He asserts South Place had authority to make the draw, which it used to reimburse Carrabelle for expenses incurred on its behalf, and Stokes had authority to issue same as manager of South Place. Debtor also states that Plaintiff has offered no evidence to support a finding that these or subsequent acts were malicious. Finally, Debtor maintains that Plaintiff waived all such claims based on their merger into the Settlement Agreement.

## III. *Debtor's Motion to Dismiss*

▉▉▉▉ Regarding the motion to dismiss, the Court concludes that under Fed. R.Bankr.P. 7009, Plaintiff has presented sufficient allegations to withstand Debtor's challenge by alerting Debtor to the alleged misconduct on which his claim is based, and thus this motion is denied.[4] Fraud is a serious allegation and under Rule 9(b), it must be pled with particularity such that even though malice and intent may be alleged generally, facts concerning the time, place, and content of the alleged misrepresentations at issue should be presented. Plaintiff's evidence regarding the statements and representations in question are summarized in his response brief (Docket Entry No. 35) and includes along with the Settlement Agreement itself, alle-

---

**4.** The United States Supreme Court has ruled that "to survive a motion to dismiss, a complaint must now contain factual allegations which are 'enough to raise a right to relief above the speculative level.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), as quoted in *Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D.Fla. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Compare *Flexi–Van Leasing, Inc. v. Perez (In re Perez)*, 155 B.R. 844, 848–50 (Bankr.E.D.N.Y.1993).

gations that the parties entered into the Agreement on January 25, 2008 as well as a recitation of the events that followed. *See* Amended Complaint, paragraphs 21–25. Subsequent acts, however, do not show intent at the time of the Agreement. Plaintiff's allegations of knowledge or intent are heavily based on inference.

■ Strictly speaking, in considering a motion to dismiss, the Court is limited in its inquiry to the legal feasibility of the complaint and whether same includes facts and not mere conclusory statements. The Court is also restricted to the complaint and documents incorporated therein. In his response, Plaintiff refers to Debtor's statement of material facts (paragraphs 48) and testimony during his Rule 2004 examination (88:21–89:5; 94:7–10 (*see also* 94:17–95:3)), in addition Stokes' affidavit (paragraph 10). *See* Response Brief at 6–9. The Court further notes that complaints may not be amended by responsive pleadings.

Because the parties seem to have already addressed the disposition of this proceeding principally through summary judgment, and motions to dismiss are often denied to allow the party to amend, the Court finds it appropriate in this instance to consider the entire record. Upon careful review of the pleadings and taking the allegations as true, the Court concludes that the motion to dismiss is denied. The facts as presented and their context are stated with sufficient particularity, precisely in relation to their bearing on the issue of Debtor's knowledge and intent at the time he entered into the Settlement Agreement, as plausibly supporting a claim for relief under Section 523(a)(2)(A).[5]

## IV. *Debtor's motion for summary judgment*

■ The Court next addresses Debtor's motion for summary judgment and upon review of same, concludes that while Plaintiff has met his burden in response to the motion with respect to the claim in count I, he has failed to do so regarding count II and the motion is granted to that extent.[6]

Summary judgment may be granted pursuant to Fed.R.Civ.P. 56, applicable herein by and through Fed.R.Bankr.P. 7056, if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Further, all reasonable doubts should be resolved in favor of the non-moving party, and "if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir.1994), citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985). Presumptions or disputed inferences drawn from a limited factual record cannot support entry of summary judgment, and the court cannot choose between competing inferences. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997); *Raney v. Vinson Guard*

---

**5.** The claim in count II under Section 523(a)(6) is decided in connection with the motion for summary judgment.

**6.** The burden of proof rests upon Plaintiff as the creditor seeking a ruling that his claim should be excepted from discharge. *See FDS Nat'l Bank v. Alam (In re Alam)*, 314 B.R. 834, 837 (Bankr.N.D.Ga.2004), citing *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994).

*Serv., Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997).[7]

A. *Count I–11 U.S.C. § 523(a)(2)(A)*

▮▮▮▮ With regard to Plaintiff's allegations in count I, the Court observes that to succeed under 11 U.S.C. § 523(a)(2)(A), Plaintiff must show that Debtor "committed positive or actual fraud involving moral turpitude or intentional wrongdoing."[8] Moreover, "legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency to deceive, yet not originating in an actual deceitful design, is insufficient." *Raccuglia,* 464 B.R. at 485; *see also Agricredit Acceptance Corp. v. Gosnell (In re Gosnell),* 151 B.R. 608, 611 (Bankr.S.D.Fla.1992); *see also Burroughs v. Pashi (In re Pashi),* 88 B.R. 456, 458 (Bankr.N.D.Ga.1988). Hence, under Section 523(a)(2)(A), Plaintiff must establish that the Debtor obtained money, property, or credit from Plaintiff: (1) by false representation, pretense, or fraud; (2) knowingly made or committed; (3) that occurred with the intent to deceive the Plaintiff or to induce his acting on

same; (4) upon which Plaintiff actually and justifiably relied; and (5) that Plaintiff suffered damages, injury, or loss as a result thereof. *HSSM #7 Ltd. Pshp. v. Bilzerian (In re Bilzerian),* 100 F.3d 886, 892 (11th Cir.1996); *Sterling Factors, Inc. v. Whelan (In re Whelan),* 245 B.R. 698, 705–06 (N.D.Ga.2000); *Lusk v. Williams (In re Williams),* 282 B.R. 267, 272 (Bankr. N.D.Ga.2002). This provision addresses deceit or artifice rooted "in a specific intent to mislead, trick, or cheat another person or entity," and such intent to deceive may be established using circumstantial evidence looking to the totality of a situation. *Raccuglia,* 464 B.R. at 485.[9] Along with an affirmative misrepresentation, fraud may include intentional silence or concealment of a material fact. *FCC Nat'l Bank v. Gilmore (In re Gilmore),* 221 B.R. 864, 872 (Bankr.N.D.Ala.1998); *see also Duncan v. Bucciarelli (In re Bucciarelli),* 429 B.R. 372, 375–76 (Bankr. N.D.Ga.2010).

As the moving party who does not bear the burden of proof at trial, Debtor must

---

7. Once the party moving for summary judgment has identified those materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits on personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance, Inc.,* 4 F.3d 946, 948–49 (11th Cir.1993); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112 (11th Cir.1993).

8. *Bracciodieta v. Raccuglia (In re Raccuglia),* 464 B.R. 477, 485 (Bankr.N.D.Ga.2011). Section 523(a)(2)(A) provides in pertinent part as follows:

    (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....
11 U.S.C. § 523(a)(2)(A). These elements must be proven by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *League v. Graham (In re Graham),* 191 B.R. 489, 493 (Bankr.N.D.Ga.1996); *accord City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277 (11th Cir.1995).

9. Reckless disregard for the truth or falsity of a statement can also supply the necessary basis for a determination of nondischargeability under this provision in the proper circumstances. *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985), *superseded on other grounds* by Pub.L.No. 98–353, 98 Stat. 333 (1984).

show that there is "an absence of evidence to support the nonmoving party's [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such showing, as noted above, Plaintiff must then demonstrate the existence of a genuine dispute for trial. Further, under Fed.R.Civ.P. 56(e), Plaintiff cannot rely on denials but must set forth "specific facts showing" such dispute as, for instance, through affidavits that contain more than conclusory statements as to ultimate facts. Here, Plaintiff seeks to establish that Debtor did not intend to perform under the Settlement Agreement citing Debtor's own statements, through certain inferences based on circumstantial evidence such as Debtor's conduct after signing the Settlement Agreement, and from his denial through counsel of Debtor's statement of material facts (*See* Response, pp. 7–11 (Docket Entry No. 35)).

■ For purposes of Section 523(a)(2)(A), a failure to fulfill a promise is not sufficient, as it must be shown that Debtor entered into the settlement either knowing that he could not, or that he did not intend to, perform according to its terms. *See Bropson v. Thomas (In re Thomas)*, 217 B.R. 650, 653 (Bankr. M.D.Fla.1998); *American Surety & Cas. Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). Thus, Plaintiff bears the burden of demonstrating that the promises Debtor breached were actually made with fraudulent intent from the inception of the underlying transaction, and for purposes of this motion must show the existence of a dispute based on factual evidence. Debtor states via affidavit that he intended to perform his obligations, but could not do so. Docket Entry No. 34, paragraphs 10, 11. Similarly, his statement during a deposition also evidences an intent to attempt to obtain a release, but not necessarily a guarantee.

Docket Entry No. 35–11, page 76. In addition to his interpretation of these statements by Debtor, Plaintiff relies on inferences from Debtor's alleged conduct "inconsistent with what would be expected [from one] acting in good faith" under the agreement, as in incurring a second mortgage on the subject property, which Debtor admits but claims occurred in an effort to stave off foreclosure. *See Rosen v. Protective Life Ins. Co.*, 817 F.Supp.2d 1357, 1375–76 (N.D.Ga.2011) (cites omitted).

On summary judgment, inferences must be construed in Plaintiff's favor for purposes of Debtor's motion, the Court concludes that Plaintiff has shown specific facts creating an issue on his claim of fraud in connection with the Settlement Agreement. The Court again observes that the fact of an undeniable breach, without more, however, does not necessarily create an issue regarding whether Debtor misrepresented his intention to perform under the terms of the agreement at its *inception,* and this remains the case even if his *subsequent* failure to fulfill his promises was intentional.

■ Based upon a review of the motion, response, and other pleadings of record, however, the Court concludes that with regard to summary judgment, a genuine dispute of fact exists on the issue whether Debtor had the requisite intent to defraud Plaintiff at the time he entered into the Settlement Agreement. Given the nature of the claim asserted herein, and the difficulty in ascertaining subjective intent and the general unsuitability of issues regarding knowledge, intent, or state of mind as well as fraud to summary disposition on motion, the Court needs to convene a trial to hear Debtor's testimony and observe his demeanor under examination before making any findings concerning Plaintiff's allegations concerning Debtor's

intent or knowledge. In sum, based on Rule 7056 and cited case authority, disputed issues of fact cannot be decided, the evidence weighed, inferences drawn or construed against the non-movant, or matters of credibility determined on a motion for summary judgment, and the existence of fact questions in the record precludes entry of relief for Debtor on count I of the amended complaint.

The Court further notes, however, that even if Plaintiff establishes the necessary intent on the part of Plaintiff, there are serious questions regarding justifiable reliance in connection with Debtor's alleged promise to cause a third party to release its guaranty rights. Plaintiff will need to establish the grounds for his reliance as "justifiable reliance is a subjective standard measured by the individual creditor's own capacity, knowledge, and information." *Love v. Barner (In re Barner)*, 2012 WL 987621, *2 (Bankr.N.D.Ga.2012); *Vann*, 67 F.3d at 283. *See also Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Citing the law as stated in *Denim North America Holdings, LLC v. Swift Textiles, LLC*, 816 F.Supp.2d 1308, 1323 (M.D.Ga.2011), Plaintiff claims that obtaining the release was a matter within Debtor's knowledge as opposed to a mere statement of hope or opinion. Yet, Plaintiff must still elaborate regarding Debtor's "apparent power" over the bank and his alleged intentional failure to exercise it. In addition, Plaintiff must also demonstrate through sufficient evidence that Plaintiff's injuries, if properly proven, in terms of conveying back his ownership interest, placement of a second mortgage on the subject property by Debtor, and Plaintiff's forbearance in bringing suit, re-

sulted from Debtor's knowing misrepresentations.

Moreover, as argued by Debtor, under Georgia law which governs the Settlement Agreement, the existence of the merger clause precludes reliance on any alleged pre-contractual representations, and restricts the parties to the written terms of the subject agreement. *See* Settlement Agreement, paragraphs 7 & 8. Operation of a merger clause may be limited, however, if the alleged false representation is contained in the settlement agreement itself, which may be the case based on a plain reading of the specific terms of the agreement. *See* Settlement Agreement, reference to "undertakings" in sixth "Whereas" paragraph; paragraphs 3.1, 3.2, & 4.4, attached to Docket Entry No. 28 as Exhibit "E." *See also Worsham v. Provident Companies, Inc.*, 249 F.Supp.2d 1325, 1331–33 (N.D.Ga.2003). Plaintiff, who affirms the contract, contends that such a clause, while it may prohibit double recovery, does not preclude efforts to prove a contractual claim for indemnity arising from "unrelated fraudulent actions" for purposes of establishing nondischargeability.[10]

Upon review of the Agreement as a question of law the Court concludes that there are grounds to apply the exception to the merger clause rule herein. There is sufficient ambiguity in these references regarding Debtor's duty and the parties' relative understanding thereof to place operation of the merger clause in question in terms of the exception to same, and this legal issue and its attendant effect on Plaintiff's reliance on pre-contractual representations of Debtor will need to be argued.

---

**10.** The merger clause argument is actually asserted in response to both counts by Debtor, though apparently addressed by Plaintiff only in connection with count II. The Court is also addressing the argument with regard to count I.

In sum, the Court concludes that for purposes of count I, Plaintiff has created an issue regarding the intent underlying Debtor's conduct inconsistent with the Settlement Agreement, as well as the scope of Debtor's contractual duties in indemnifying Plaintiff thereunder and the parties' relative understanding thereof.

B. *Count II—11 U.S.C. § 523(a)(6)*

▮ Next, with respect to count II of the amended complaint, the Court observes that a willful and malicious injury under 11 U.S.C. § 523(a)(6) is confined to acts, such as intentional torts, done with an actual intent to cause injury as opposed to acts done intentionally that result in injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *see also Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir.1995). This distinction is important because reckless conduct resulting in injury that evidences an entire want of care or conscious indifference to the consequences is not sufficient under the legal standard established in this exception to discharge. Stated differently, Section 523(a)(6) addresses only those situations in which a debtor desired the injury caused by his conduct. It does not reach a debtor's failure to meet a duty of care that results in injury to someone else. *See generally Herndon v. Brock (In re Brock)*, 186 B.R. 293 (Bankr. N.D.Ga.1995); *Myrick v. Ballard (In re Ballard)*, 186 B.R. 297, 299–301 (Bankr. N.D.Ga.1994).

As discussed in *Henderson v. Woolley (In re Woolley)*, 288 B.R. 294, 301–02 (Bankr.S.D.Ga.2001), whereas *Geiger* generally narrowed the scope of this provision to "trespassory intentional torts," the state of mind of a debtor regarding same has been subject to further interpretation in the case law. Reviewing recent decisions on this issue, the court in *Woolley* examined the Eleventh Circuit precedent in the *Walker* case and concluded that sufficient evidence of a "debtor's personal substantial certainty" with regard to the injury resulting from his act remains necessary under Section 523(a)(6), as opposed to a purely objective or reasonable person test that risks reinstating the "previously rejected 'reckless disregard standard.'" 288 B.R. at 302; *accord Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir.1998) (allowing either an objective or a subjective finding to satisfy willful and malicious injury).

▮ Thus, with respect to willfulness, it must be shown that a debtor either "acted with the desire to cause" the resulting harm to a targeted person, acted "with knowledge that injury will occur" to such person, or acted in the belief that harm was "substantially certain to result" either through evidence of "subjective motive" regarding same or when "no other plausible inference" can be drawn from the record that the debtor entertained such knowledge. *See Woolley*, 288 B.R. at 302 (cites omitted). In addition, malicious under this provision has been construed to mean "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Walker*, 48 F.3d at 1164 (cites omitted).

Plaintiff's claim under Section 523(a)(6) is based on the contention that the transactions between the parties herein must be viewed as a whole, and Debtor's various failures to perform properly under the construction loan agreement and the subsequent Settlement Agreement evidence an overall design to injure Plaintiff or his property. In his motion, Debtor counters that there is no proximate causal relationship between the draw and checks in question and any resulting injury thereby, and the injury arising due to Debtor's unfulfilled agreement to indemnify Plaintiff under the terms of the settlement. *See gen-*

158

*erally Doughty v. Hill (In re Hill)*, 265 B.R. 270, 276 (Bankr.M.D.Fla.2001).

Strictly speaking, to Debtor's argument that the creation of the indemnity at a time after the alleged fraudulent actions definitively precludes proximate cause, the Court observes that a settlement necessarily sequentially follows the conduct forming the basis of same and thus, proximate cause, if proven, may lie in such situation. In any event, this proceeding will be decided on issues in connection with the settlement agreement and release and not the alleged misconduct under the loan agreement that led to the settlement. Plaintiff has not set forth specific facts showing a genuine issue for trial on his claim regarding an alleged "chain reaction" with respect to Debtor's intent to injure Plaintiff as beginning in and with Debtor's failures under the loan agreement, and as seen in the cumulative effect of Plaintiff's losses through the series of events as narrated in the record as extending through the Settlement Agreement and thereafter.

■ Turning then to the Settlement Agreement, Plaintiff insists he "effectively substituted" his claims for the aforesaid wrongdoing with Debtor's indemnification promise. The Court concludes, however, that Plaintiff has not designated through proper evidence, submitted in response to the materials offered by Debtor in his motion, those specific facts creating a genuine issue for trial regarding either: his assertion that Debtor intended the harm Plaintiff eventually suffered as a result of his conduct in connection with the Settlement Agreement; or, that Debtor knew

such injury was substantially certain to occur as a consequence, and acted maliciously with regard to same in the manner required under Section 523(a)(6).[11] While Plaintiff's forbearance and return of his interest was foreseeable and contemplated in the settlement, the present record does not contain evidence creating an issue on the question whether Debtor had the belief and intention that the Plaintiff incur injury consequent thereto, or that he would be sued on his guaranty and face exposure as a result of Debtor's failure to honor the hold harmless agreement. Again, the chain of events as posited is just too remote, tenuous, and general on this record to present a genuine issue for trial on Plaintiff's claim under Section 523(a)(6).

■ Moreover, there is no evidence to support a fact issue on maliciousness such as an intent to injure in relation to Plaintiff. Although evidence of ill will is not necessary, facts showing a triable issue on the allegation that Debtor acted without just cause or excuse, or in deliberate disregard of his duties under the settlement as part of an overall design, have not been presented. Again, the allegations upon which Plaintiff relies here are simply too remote and tenuous to create a fact issue. The Court is mindful that issues pertaining to state of mind are generally not appropriate for disposition by summary judgment. Yet, there are instances where the alleged misconduct does not raise a genuine issue of material fact regarding an action for a willful and malicious injury under Section 523(a)(6), which the Court

11. As noted above, once the Debtor, who does not bear the burden of proof, has shown "an absence of evidence to support the nonmoving party's [Plaintiff's] case," Plaintiff must demonstrate the existence of a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d

265. Under Fed.R.Civ.P. 56(e), Plaintiff cannot rely on denials but must set forth "specific facts showing" such dispute as, for instance, through affidavits that contain more than conclusory statements as to ultimate facts.

concludes is the case herein.[12] Hence, the Court concludes that entry of summary judgment in favor of Debtor on count II is appropriate.

In accordance with the foregoing discussion, it is

**ORDERED** that the motion of Defendant–Debtor to dismiss be, and the same hereby is, **denied** regarding Plaintiff's amended complaint; and, it is

**FURTHER ORDERED** that Debtor's motion for summary judgment be, and the same hereby is, **denied** with respect to Plaintiff's claim in count I of the amended complaint with respect to 11 U.S.C. § 523(a)(2)(A), but that the motion be, and hereby is, **granted** with respect to Plaintiff's claim in count II under 11 U.S.C. § 523(a)(6).

Plaintiff's claim under count I will be set for trial consistent with the reasoning and analysis set forth hereinabove by separate written notice.

No judgment is entered at this time regarding count II, as same will be contained in the Court's final order at the conclusion of the trial on count I or any other final disposition of this proceeding.

**IT IS SO ORDERED.**

---

12. *See e.g. Tso v. Nevarez (In re Nevarez),* 415 B.R. 540, 544 (Bankr.D.N.M.2009). The Court also observes that Debtor's contention that Plaintiff is somehow precluded from asserting a claim under Section 523(a)(6) on grounds that he waived same through the Settlement Agreement is too broad.